UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THOMAS LEITER, | ) |
| Plaintiff | ) ) ) ) |
| vs. | ) CAUSE NO. 3:10-CV-320 RM ) |
| JOSEPH BUMBAUGH and TOWN OF WINONA LAKE, | ) ) ) ) |
| Defendants | ) |

## OPINION AND ORDER

This cause is before the court on the motion of the two remaining defendants, Joseph Bumbaugh and the Town of Winona Lake, for summary judgment on the claims against them in Thomas Leiter's second amended complaint. Mr. Leiter alleges Officer Bumbaugh and the Town violated Indiana law and his rights under the Fourth and Fourteenth Amendments to the United States Constitution based on claims of excessive force, false arrest/imprisonment, unlawful detainment, illegal search and seizure, deprivation of liberty, and denial of medical treatment. Mr. Leiter has filed his response to the motion and the defendants their reply. For the reasons that follow, the court GRANTS the defendants' motion.

FACTS

Thomas Leiter was driving on Center Street in Warsaw, Indiana, at around 10:15 p.m. on July 1, 2008 when his pickup truck struck a vehicle that was stopped on the shoulder of the road. Mr. Leiter says he struck the other vehicle unintentionally and couldn't stop at the scene because he was suffering an attack of hypoglycemia associated with his diabetic condition. As Mr. Leiter drove away from the accident scene, he was pursued by Corporal Kevin Gelbaugh of the Kosciusko County Sheriff's Department, who, with his squad car lights flashing and siren on, tried to get Mr. Leiter to pull over and stop.[1] Mr. Leiter claims he doesn't remember being followed by the squad cars.

Mr. Leiter drove on for a number of blocks while police followed. He stopped at a red light, but moved on when the light turned green. Some blocks later, he stopped again behind a line of cars waiting at a red light. Cpl. Gelbaugh stopped behind Mr. Leiter, got out of his squad car, approached Mr. Leiter's car with his gun drawn, and ordered Mr. Leiter to get out of his truck. Mr. Leiter didn't respond. Cpl. Gelbaugh holstered his gun, opened Mr. Leiter's driver's side door, and tried to pull Mr. Leiter from the truck, but his efforts were unsuccessful: Mr. Leiter had his hands locked on the steering wheel, making it impossible for Cpl. Gelbaugh to remove him from the truck. Deputy Bumbaugh joined Cpl. Gelbaugh at the driver's side of Mr. Leiter's truck, and in an attempt to assist in the removal

---

[1] The total elapsed time of the slow-speed chase was a bit over two minutes. *See* Deft. Exh. A (dash camera video).

of Mr. Leiter from truck, Deputy Bumbaugh reached into the truck and, using his fist, applied a forearm strike to Mr. Leiter's left arm. Mr. Leiter released his hold on the steering wheel, and Deputy Bumbaugh and Cpl. Gelbaugh pulled him from the truck and put him on the ground. Mr. Leiter was handcuffed, arrested, and taken into custody. According to Mr. Leiter, criminal charges remain pending against him in Kosciusko County.

Mr. Leiter filed suit in the Kosciusko County Superior Court against the Kosciusko County Sheriff's Department and its officers (Kevin Gelbaugh, Brandon Hepler, and Sam Whitaker); the City of Warsaw, the Warsaw Police Department, and Warsaw Officer Clay Lane; and the Town of Winona Lake, the Winona Lake Police Department, and Winona Lake Deputy Marshal Joseph Bumbaugh, claiming that he was the victim of excessive force, false arrest/imprisonment, unlawful detainment, illegal search and seizure, deprivation of liberty and property, and denial of medical treatment. The action was removed to this court, and Mr. Leiter dismissed his claims against the Kosciusko County defendants, the Warsaw defendants, and the Winona Lake Police Department. Still pending are Mr. Leiter's claims of violations of the Fourth and Fourteenth Amendments and Indiana law by Deputy Bumbaugh and the Town of Winona Lake.

Mr. Leiter claims Deputy Bumbaugh's "impulsive arm strike" injured him[2] and that the force of that action was unreasonable and excessive. Mr. Leiter also

---

[2] Mr. Leiter alleges in his second amended complaint that "as a result of the incident," he suffered "a broken shoulder and contusions," Second Amd. Compl., ¶ 12; in his summary judgment response, he says he suffered a broken arm. Resp., at 2.

alleges that the injuries and damages he suffered resulted from the Town's customs, policies, and/or practices of "exposing persons to unreasonable force and seizure during the course of traffic stops," failing to "train, supervise, and control investigators and officers concerning investigations and/or traffic stops," failing "to discipline, train, or otherwise sanction police officers who violate the rights of citizens," and failing to train its police officers "with regard to the proper detection of and response to persons who are suffering from diabetes [and] to train [its] officers to distinguish properly between medically caused actions of diabetics and the actions of those who are intoxicated." Second Amd. Compl, ¶¶ 7, 11, 12. The defendants seek summary judgment on all of Mr. Leiter's claims.

Mr. Leiter says in his response brief that he doesn't contest the defendants' statement that Deputy Bumbaugh had no involvement in the incident after Mr. Leiter was removed from his truck, so these defendants can't be liable to Mr. Leiter for false arrest/imprisonment, unlawful detainment, illegal search and seizure, deprivation of liberty, or denial of medical treatment. Neither does Mr. Leiter contest the defendants' argument that because Deputy Bumbaugh had no involvement in any actions after Mr. Leiter's removal from his truck, the claims relating to the training of officers about arrests and medical conditions are inapplicable to these defendants. Remaining for consideration, then, is whether Deputy Bumbaugh's actions amounted to excessive force in violation of federal and/or state law, whether Deputy Bumbaugh is entitled to qualified immunity,

4

and whether the Town of Winona Lake is liable under Indiana law for the actions of its employee.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Springer v. Durflinger, 518 F.3d 479, 483-484 (7th Cir. 2008); Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit,

5

when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

## Discussion

"[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Acevedo v. Canterbury, 457 F.3d 721, 724 (7th Cir. 2006) (citations omitted). That inquiry requires the court to examine the "totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government[al] interests at stake." Cyrus v. Town of Mukwonago, 624 F.3d 856, 861 (7th Cir. 2010) (internal quotation and citation omitted). "Because law-enforcement officers must make critical, split-second decisions in difficult and potentially explosive situations, [the court must] evaluate the reasonableness of the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Cyrus v. Town of Mukwonago, 624 F.3d 856, 862 (7th Cir. 2010) (*quoting* Graham v. Connor, 490 U.S. 386, 396 (1989)). A "proper application" of the Fourth Amendment's reasonableness test requires careful consideration of the facts and circumstances of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). "Indiana's excessive force standard effectively parallels the federal standard." Fidler v. City of Indianapolis, 428 F. Supp. 2d 857, 866 (S.D. Ind. Apr. 20, 2006) (*citing* O'Bannon v. City of Anderson, 733 N.E.2d 1, 3 (Ind. Ct. App. 2000)).

The defendants maintain that Deputy Bumbaugh used reasonable force under the circumstances known to him at the time of the incident. The defendants rely on Deputy Bumbaugh's affidavit statements about the incident in question. Deputy Bumbaugh says that on the night in question he received a radio transmission from Cpl. Gelbaugh that a vehicle had struck a Kosciusko County Sheriff's Department car and fled the scene. Aff., ¶ 4. Deputy Bumbaugh reports that he was in the area, so he joined the pursuit behind Cpl. Gelbaugh's police car. Aff., ¶¶ 5-6. Once the offending vehicle stopped – an action that Deputy Bumbaugh says he believed happened only because a motorist in front of the offending vehicle had also stopped, Aff., ¶ 8 – Deputy Bumbaugh parked next to Cpl. Gelbaugh's car. Aff., ¶ 9. Deputy Bumbaugh says that when he saw Cpl. Gelbaugh get out of his car and approach the side of the offending vehicle with his weapon drawn, he exited his vehicle and positioned himself behind Cpl. Gelbaugh. Aff., ¶¶ 10-11. Deputy Bumbaugh says he heard Cpl. Gelbaugh verbally instruct the driver to exit the vehicle, Aff., ¶ 12, but the driver didn't "acknowledge or comply" with those commands. Aff., ¶ 13. Deputy Bumbaugh says Cpl. Gelbaugh then reached into the offending vehicle and tried to pull the driver out, Aff., ¶ 14,

7

but "the driver had his hands locked on the steering wheel of the vehicle and refused to exit." Aff., ¶ 15.

Deputy Bumbaugh says that based on his observations, he

> reasonably believed that [Mr. Leiter] posed a danger to himself, the public, and responding officers. Specifically, your affiant believed that if traffic ahead of [Mr.] Leiter cleared, [Mr.] Leiter would continue his flight from law enforcement, possibly striking those officers that had surrounded the vehicle in the process. Your affiant's concerns were consistent with his knowledge of [Mr.] Leiter's actions on the night in question, including the fact that [Mr.] Leiter had previously struck a police vehicle, had failed to stop at the scene of that accident, and had subsequently refused to stop his vehicle despite being pursued by multiple law enforcement vehicles. In light of his concerns, your affiant determined that the best course of action was to remove [Mr.] Leiter from his vehicle as soon as possible.

Aff., ¶¶ 16-18.

Deputy Bumbaugh says that in an effort to remove Mr. Leiter from the truck, he "applied a forearm strike to the radial nerve area on [Mr.] Leiter's left forearm, using a closed right fist;" he says he struck Mr. Leiter only once and didn't use a weapon of any kind. Aff., ¶¶ 19-21. Deputy Bumbaugh reports that once he struck Mr. Leiter, Mr. Leiter let go of the steering wheel, and he and Cpl. Gelbaugh were able to remove Mr. Leiter from the truck and place him on the ground. Aff., ¶¶ 23-24. Deputy Bumbaugh explains that his use of the forearm strike "was successful in its goal of removing [Mr. Leiter] from the vehicle and preventing [Mr.] Leiter from threatening the safety of himself, the public, and the responding officers through further operation of [the] vehicle." Aff., ¶ 25. Deputy Bumbaugh concludes that the only purpose of applying the forearm strike "was

8

to release [Mr.] Leiter's hands from the steering wheel in order to remove [Mr.] Leiter from the vehicle and protect the safety of [Mr.] Leiter, the public, and those officers surrounding [Mr.] Leiter's vehicle." Aff., ¶ 22.

The defendants also submit the dash camera video from a police car involved in the pursuit of Mr. Leiter. The defendants say the video shows that Mr. Leiter didn't stop in response to the police vehicles' flashing lights for about two minutes; Mr. Leiter stopped at a red light, but drove away once the light changed and the traffic in front of him cleared; and Mr. Leiter stopped a second time when traffic in front of him stopped, but didn't take the truck out of gear or engage the parking brake. The defendants say the video also shows that Mr. Leiter didn't acknowledge or comply with Cpl. Gelbaugh's verbal commands to get out of the truck, and Mr. Leiter held firm to the steering wheel when Cpl. Gelbaugh grabbed him around the waist and tried to pull him from the truck. The defendants note that the video shows that Deputy Bumbaugh applied a forearm strike to Mr. Leiter with a closed fist, Mr. Leiter let go of the steering wheel, and Deputy Bumbaugh and Cpl. Gelbaugh were able to remove Mr. Leiter from his truck and lay him on the ground. Mr. Leiter hasn't alleged or argued that the video "was doctored or altered in any way, [or] that what it depicts differs from what actually happened." Scott v. Harris, 550 U.S. 372, 378 (2007).

The defendants argue that Deputy Bumbaugh's use of force was reasonable under the considerations of Graham v. Connor: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

9

others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. The defendants say Deputy Bumbaugh had reason to believe that Mr. Leiter had committed a number of serious crimes – Mr. Leiter had used his vehicle as a deadly weapon against the Kosciusko County Sheriff's officers when he struck their vehicle, he failed to stop his vehicle at the scene of an accident, and he had resisted law enforcement. The defendants say that Mr. Leiter posed a danger to himself, officers on the scene, and others – Mr. Leiter had already struck one police car and had ignored pursuing police vehicles for a number of blocks. Lastly, the defendants say the facts establish that Mr. Leiter was fleeing from police – he led police on a slow speed chase for two minutes and was in a position to resume his flight had the traffic in front of him cleared. Mr. Leiter hasn't addressed the Graham considerations or challenged the defendants' arguments in this regard.

The defendants say, too, that Deputy Bumbaugh's action in removing Mr. Leiter from his vehicle "as soon as possible" was necessary to "protect the safety of [Mr.] Leiter, the public, and those officers surrounding [Mr.] Leiter's vehicle." Aff., ¶¶ 18, 22. According to Deputy Bumbaugh, if the traffic in front of Mr. Leiter's stopped vehicle had cleared, Mr. Leiter could have continued his flight from law enforcement, "possibly striking those officers that had surrounded the vehicle," Aff., ¶ 16. Deputy Bumbaugh says his concerns were based on Mr. Leiter's actions that night, "including the fact that [Mr.] Leiter had previously struck a police vehicle, had failed to stop at the scene of that accident, and had

subsequently refused to stop his vehicle despite being pursued by multiple law enforcement vehicles." Aff., ¶ 17. Mr. Leiter hasn't addressed the defendants' argument about the issue of safety nor has he challenged Deputy Bumbaugh's statements about his safety concerns at the site.

Mr. Leiter focuses his response, and argues that the incident at issue should be judged, on the events that took place during a six second interval – "the period after Corporal Gelbaugh opened the truck door until Mr. Leiter was apprehended," Resp., at 8 – but that view is too narrow. "To determine whether the force used to effect a seizure is unreasonable, [the court must] examine the 'totality of the circumstances' surrounding the incident." Sallenger v. Oates, 473 F.3d 731, 739 (7th Cir. 2007); *see also* Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 592 (7th Cir. 1997) ("Due to the fact-sensitive nature of the inquiry, the determination whether a police officer used excessive force depends on the totality of the circumstances surrounding the encounter."). Therefore, an examination of Deputy Bumbaugh's actions must be based on the entire picture – from his initial receipt of information about the striking of a police car through the time he administered the arm strike – not just the six second interval Mr. Leiter cites.

Mr. Leiter disputes Deputy Bumbaugh's claim that he (Mr. Leiter) "refused to exit" his truck; Mr. Leiter says a refusal implies intent, and his actions "were not voluntary." Resp., at 1. Mr. Leiter says he "has consistently testified that he was not aware of what was occurring at the time of the incident, and in any event, [] he did not intend to avoid the law enforcement." Resp., at 9. Accepting Mr.

11

Leiter's statements in this regard are true, Mr. Leiter hasn't alleged that at the time of the incident at issue, Deputy Bumbaugh could or should have been aware of Mr. Leiter's undisclosed intention to not avoid law enforcement or of statements Mr. Leiter would later make at his deposition. Mr. Leiter also disputes the defendants' claim that the vehicle he struck was a Kosciusko County Sheriff's Department car. According to Mr. Leiter, "such allegation has not been agreed upon by Mr. Leiter or determined by a court of law; nor have Winona Lake defendants referenced any materials in support of that allegation." Resp., at 2. Deputy Bumbaugh testified that the information he received via radio transmission was that Cpl. Gelbaugh was pursuing a vehicle that had struck a Sheriff's car; Mr. Leiter hasn't challenged that testimony or presented any evidence to the contrary. Neither of the "disputes" cited by Mr. Leiter raise questions of material fact that bear on the reasonableness of Deputy Bumbaugh's actions – the relevant inquiry is what Deputy Bumbaugh believed at the time of the incident in question, not what the facts later establish. *See* Padula v. Leimbach, 656 F.3d 595, 600-601 (7th Cir. 2011) ("The dispositive question is whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an objectively reasonable manner."); *see also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–248 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)).

Mr. Leiter says the facts of this case are distinguishable from the facts of a number of cases relied by the defendants: he notes that in Smith v. Ball State Univ., 295 F.3d 763 (7th Cir. 2002), force wasn't applied until two officers made unsuccessful attempts to remove an unresponsive person from a vehicle. Resp., at 4. Mr. Leiter notes that, unlike the person police were attempting to remove from a vehicle in Padula v. Leimbach, 740 F. Supp. 2d 980 (N.D. Ind. 2010), he "never took a swing at officers, flailed his armed, yelled, or acted in any physical manner which a reasonable person would have taken to be a threat toward the officers." Resp., at 6. Mr. Leiter says, too, that, unlike the actions of the police in Overton v. Hicks, No. 1:06-cv-1513, 2008 WL 2518229 (S.D. Ind. June 17, 2008), Deputy Bumbaugh didn't give him any advanced notice or warning before using force to remove him from the truck. According to Mr. Leiter, Deputy Bumbaugh "jumped the gun;" he opines that the Deputy "should have either first attempted to assist [Corporal] Gelbaugh with less forceful means or waited for [Corporal] Gelbaugh to use reasonable means to extract Mr. Leiter." Resp., at 8.

The video evidence establishes that police pursued Mr. Leiter for over two minutes with their lights flashing. While no high-speed chase was involved, the presence of flashing lights on the road caused other drivers to pull over and stop. When Mr. Leiter stopped at a second red light behind a line of other stopped vehicles, police were able to approach his truck before he drove off. Cpl. Gelbaugh verbally ordered Mr. Leiter out of his truck. When Mr. Leiter didn't respond, Cpl. Gelbaugh tried to pull Mr. Leiter physically from the vehicle, without success.

13

Deputy Bumbaugh then applied an arm strike to Mr. Leiter, causing him to release his hold on the steering wheel, and the officers removed him from his truck.

The defendants have presented unrebutted evidence that Deputy Bumbaugh believed that the circumstances were such that he should assist in the immediate removal of Mr. Leiter from his truck – Mr. Leiter had committed crimes in the presence of police officers, he was fleeing from those officers, he was unresponsive at the scene, and allowing him to remain in his running vehicle and leave the scene posed a concern for the safety of Mr. Leiter, the officers on the scene, and members of the public who were driving in the area. *See* Smith v. Ball State Univ., 295 F.3d 763, 769 (7th Cir. 2002) ("[Smith's] unresponsiveness did not neutralize the safety threat, but rather exacerbated it by adding an element of unpredictability."). Based on the totality of the circumstances known to Deputy Bumbaugh at the time of the incident at issue, no reasonable jury could find that Deputy Bumbaugh's actions were unreasonable or that his single blow to Mr. Leiter's arm in aid of another officer's unsuccessful attempts to remove Mr. Leiter from his vehicle rose to the level of a constitutional violation. *See* Smith v. Ball State Univ., 295 F.3d 763, 770 (7th Cir. 2002) ("[T]he officers were entitled to order Smith to exit his vehicle [and] [w]hen Smith failed to do so, the officers were justified in using force to remove him, particularly given the potential threat to public safety of an [unresponsive] driver in command of a running vehicle."); Jacobs v. City of Chicago, 215 F.3d 758, 773 (7th Cir. 2000) ("In the end, the

excessive force inquiry looks to whether the force used to seize the suspect was excessive in relation to the danger he posed – to the community or to the arresting officers – if left unattended.").

Even accepting as true the fact that Mr. Leiter wasn't actively resisting or intending to avoid law enforcement, "a reasonable officer who happened on the scene could reasonably misconstrue [Mr. Leiter's] unresponsiveness as resistance requiring the minimal use of force." Smith v. Ball State Univ., 295 F.3d 763, 771 (7th Cir. 2002). Mr. Leiter says that other means should have been used to get him out of his vehicle, but that opinion, without more, is insufficient to establish that Deputy Bumbaugh's actions were unreasonable, especially since less forceful means were employed in an unsuccessful attempt to get Mr. Leiter to exit his truck. *See* Illinois v. Lafayette, 462 U.S. 640, 647 (1983) ("The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means."); Plakas v. Drinski, 19 F.3d 1143, 1149 (7th Cir. 1994) ("The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the police officers actually did was reasonable."). Mr. Leiter hasn't demonstrated the existence of a genuine issue of material fact as to whether Deputy Bumbaugh's actions amounted to excessive force under federal or Indiana law.

Because the court has determined that Deputy Bumbaugh's actions didn't amount to excessive force, consideration of the defendants' arguments relating to qualified immunity and the liability of the Town of Winona Lake is unnecessary.

CONCLUSION

For these reasons, the court GRANTS the motion of Joseph Bumbaugh and the Town of Winona Lake for summary judgment [docket # 74] on Thomas Leiter's claims against them, and VACATES the final pretrial conference set for April 23, 2012 and the three-day jury trial scheduled to commence on May 1, 2012.

SO ORDERED.

ENTERED:   January 4, 2012

                                             /s/ Robert L. Miller, Jr.
                                             Judge, United States District Court